1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  MICHAEL MARKS,                        No.  2:15-cv-0665 JAM DB P

12                    Petitioner,

13        v.                              ORDER AND FINDINGS AND
                                          RECOMMENDATIONS
14  SCOTT FRAUENHEIM,

15                    Respondent.

16

17        Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a writ

18  of habeas corpus under 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered

19  against him on November 18, 2011 in the Sacramento County Superior Court on counts of

20  inflicting traumatic injury on a cohabitant, assault with a deadly weapon, kidnapping, criminal

21  threat, and false imprisonment by violence or menace.  He seeks federal habeas relief on the

22  grounds that: (1) the trial court erred when it denied his motion for a new trial; (2) trial counsel

23  was ineffective; (3) appellate counsel was ineffective; (4) the prosecutor committed misconduct;

24  and (5) petitioner's inability to cross-examine the victim at trial violated the Confrontation

25  Clause.  All pleadings have been submitted and this case is ready for decision on petitioner's

26  claims.  Also before the court are petitioner's motions for a stay, for the appointment of counsel,

27  and for an evidentiary hearing.

28  ////

                                          1

Upon careful consideration of the record and the applicable law, the undersigned denies the

motion for appointment of counsel and recommends that petitioner's motions for a stay and for an

evidentiary hearing be denied and that his application for habeas corpus relief be denied.

## BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction

on appeal, the California Court of Appeal for the Third Appellate District provided the following

factual and procedural summary:

> Dena [Marks] told emergency room personnel on November 24[, 2009] that the prior evening, her boyfriend hit her with his fists, cut her palm with a kitchen knife, hit the back of her head with a board (causing her to lose consciousness), and held her against her will in his mother's house. Dena identified defendant as her assailant. She had a bruise on her right cheek, abrasions to her face, a bruise on her left shoulder, and a cut to her right palm. She did not have any bump on her head or mark on her neck. A chest X-ray and computed tomography (CT) scan of her head and face revealed no fractures or internal injuries. The emergency room nurse contacted law enforcement authorities.

> City of Sacramento Police Officer Dustin Henderson interviewed Dena at the hospital. Dena again identified defendant as her assailant. She related the following to Officer Henderson:

> Around 8:00 or 9:00 p.m. on November 23, defendant told Dena, "[y]ou're gonna die tonight." He barricaded the door to Dena's bedroom and began to punch Dena on her head and face with both of his closed fists. He cut Dena's hand with the blade of a kitchen knife when she put her hands up to stop his strikes. He also grabbed Dena by the neck and choked her. At one point, defendant removed a gun and a razor or box cutter from his pocket and placed them on a dresser.

> Defendant beat Dena throughout the evening. Around midnight, he forced her into his car at gunpoint, telling her that his friends had her daughter and he would tell his friends to rape and kill the daughter if Dena did not comply.

> Defendant took Dena to a river. He said he was going to drown the demons out of her. He punched her and then hit her in the back of her head with a piece of wood, causing her to lose consciousness.

> Defendant then took Dena to his mother's house. He carried her into his bedroom, blocked the bedroom door, and placed Dena in the closet. He hit Dena some more until he got tired.

> The next morning, defendant told Dena "to act straight" in front of his mother, otherwise she would not get her daughter back.

2

Defendant's mother took Dena to the hospital when she saw Dena's injuries.

Officer Henderson searched defendant's residence and questioned defendant's mother Virginia Marks. The officer found a pile of clothes behind the door of defendant's bedroom, which was consistent with Dena's statement that defendant put things against his bedroom door to block the door. Virginia initially denied taking Dena to the hospital, but eventually admitted that she drove Dena to the hospital that morning. Virginia said, in response to the officer's further questioning, "It's my son. I don't know anything."

Sacramento Police Officer Lisa Nou Khang–Her interviewed Dena by telephone on November 25. The officer read the statement Dena provided to Officer Henderson verbatim and asked Dena if she wanted to make any changes to the statement. Dena confirmed the statement was correct, but changed the length of time she had dated defendant. Dena told the officer defendant assaulted her, the assault began in Dena's home, defendant had a gun, he took her to a river and then to his mother's house against her will, and he continued to hit her there. Dena said she was afraid defendant would kill her and she was going to stay with her mother until defendant was arrested.

Three days after Dena was assaulted, Sacramento County Deputy Sheriff Corey Newman responded to a report that defendant kidnapped Dena. Dena's mother Theresa Marks informed the deputy that defendant threatened Dena's family and then grabbed Dena and drove away in his car.

Dena subsequently failed to appear for an appointment to sign a form for Officer Khang–Her, and later told the officer that the kidnapping and assault never occurred. However, Dena then said the kidnapping and assault occurred, but she did not know who assaulted her. She claimed defendant was not her assailant and said she did not want to press charges against defendant.

Dena said her injuries were from a fight with another woman. She also said she did not know what really happened because of her various medical conditions. Then, she said that a male family member assaulted her and forced her to say defendant was responsible, but she would not say who assaulted her.

Testifying under a grant of immunity, Dena offered yet another story at defendant's preliminary hearing. Defendant's jury heard this preliminary hearing testimony because the district attorney's office could not locate Dena for the trial, despite its reasonably diligent efforts to find her. Dena testified at the preliminary hearing that defendant did not assault her. Instead, Terry Stephens, a family friend with whom Dena had been having an affair, assaulted her in his motor home. According to Dena, Stephens slapped and punched her on and off all day, threatened to kill her, and displayed a gun during the assault. Dena said Stephens dropped her off near a hospital the next day and instructed her to blame defendant for her injuries. Dena claimed she did what Stephens told her to do because she was scared about what Stephens might do to her children. Dena

also said she was high when Officer Henderson interviewed her, and she was mad at defendant because he left her. She said she sometimes lashed out at him because she was jealous. Dena declared she loved defendant with all her heart, noting that defendant helped her raise her children and he was the father of Dena's 16–year–old daughter.

Dena also testified that she asked defendant to pick her up from her mother's house on November 26 and she left willingly in defendant's car. Theresa likewise told the jury that her report of a kidnapping was based on a misunderstanding. Theresa denied at the trial that defendant threatened Dena or Theresa on November 26.

The prosecution played a recording of a jailhouse telephone conversation between Dena and defendant. The conversation occurred about three months before the start of the trial. Defendant told Dena in the conversation that if she did not go to court, the prosecution will have no case. Defendant said "[d]on't say nothin" and "don't even come in the courtroom."

Regarding the November 23 incident, the jury convicted defendant of inflicting injury upon a cohabitant resulting in a traumatic injury (count one—Pen. Code, § 273.5, subd. (a)),2 assault with a deadly weapon (count two—§ 245, subd. (a)(1)), kidnapping (count three—§ 207, subd. (a)), criminal threat (count four—§ 422), and false imprisonment by violence or menace (count five—§§ 236, 237). The jury found that Dena was developmentally disabled and defendant knew and reasonably should have known of her condition (§ 667.9).3 The jury was deadlocked on counts six (criminal threats) and seven (kidnapping), which relate to the November 26 incident, and the trial court declared a mistrial as to those counts. The trial court found the allegation that defendant had suffered three prior serious felony convictions to be true. It denied defendant's motion for a new trial and motion to strike his prior convictions, and sentenced defendant to 25 years to life in prison on count one, a consecutive 25 years to life in prison on count three, two years for the section 667.9, subdivision (b) enhancement [crime against a developmentally disabled victim], and a total of 20 years for the prior strikes, for an aggregate prison term of 22 years plus 50 years to life. The trial court imposed but stayed sentences of 25 years to life on counts two, four and five.

People v. Marks, No. C069757, 2013 WL 6327418, at *1-3 (Cal. Ct. App. 2013).[1]

**PROCEDURAL HISTORY**

Petitioner appealed his conviction. The Court of Appeal for the Third Appellate District struck the sentencing enhancement for a developmentally disabled victim and affirmed the judgment in all other respects. (Ex. A to Answ. (ECF No. 17-1).) Petitioner filed a petition for

---

[1] A copy of the opinion of the Court of Appeal can also be found attached to the Answer as Exhibit A. (ECF No. 17-1.)

4

review with the California Supreme Court.  Therein, he raised one claim – that the trial court erred when it denied his motion for a new trial based on new evidence in the form of another recantation from the victim.  (Pet. for Rev. (LD 5[2]).)  The California Supreme Court denied review on February 11, 2014.  (LD 6.)

Petitioner then sought habeas relief from the state courts.  He raised multiple claims of ineffective assistance of trial and appellate counsel, a claim of prosecutorial misconduct, and a confrontation clause claim.  (See LD 7, 9, 13.)  On November 19, 2014, the superior court issued a reasoned order denying the ineffective assistance of counsel claims and the prosecutorial misconduct claim on the merits.  The court denied petitioner's confrontation clause claim on the grounds that the issues raised in that claim were raised, and rejected, on appeal.  (LD 8.)  The California Court of Appeal and California Supreme Court denied petitioner's claims summarily in 2015.  (LD 12, 14.)

On March 23, 2015, petitioner initiated this action by filing a motion for a stay to permit him to exhaust his claims in state court.  (ECF No. 1.)  Petitioner was ordered to file a petition and, after his state habeas proceedings concluded, filed a first amended petition ("FAP") here on September 14, 2015.  (ECF No. 8.)  Respondent filed an answer on November 24, 2015 (ECF No. 17) and lodged the state court record here on December 10, 2015 (see ECF No. 19).  On December 11, 2015, petitioner filed a traverse.  (ECF No. 20.)

On April 27, 2017, petitioner filed a document in which he requested a stay of this proceeding to permit him to "resolve some issues with the state courts in concerns of the photo evidence that this court would not consider and the issue with trying to get the knife tested." (ECF No. 28.)  On July 12, 2017, petitioner filed a request for an evidentiary hearing and appointment of counsel.  (ECF No. 29.)  Also on July 12, petitioner filed a notice with the court that an "appeal" he had filed with the California Supreme Court had been denied.  (ECF No. 30.) Petitioner states that the appeal concerned "evidence that my trial lawyer was ineffective for not

---

[2] Respondent lodged copies of records from the state trial, appellate, and habeas proceedings. (See Notice of Lodging (ECF No. 19).)  Lodged documents are identified by the lodging number assigned them by respondent as "LD;" the record of the trial transcript is "RT;" and the clerk's transcript is "CT."

1   presenting and not having the knife tested that the alleged victim said I cut her with."  (Id. at 1.)

2   Attached to petitioner's filing are copies of orders from California courts denying petitioner's

3   recent habeas petitions.  The California Court of Appeal for the Third Appellate District denied

4   the petition in In re Marks, No. C084244 (Apr. 3, 2017), without comment or citation to

5   authority.  (Id. at 5.)  The California Supreme Court denied the petition in In re Marks, No.

6   S241457 (June 21, 2017) on the grounds that the petition was untimely and successive, among

7   other reasons.  (Id. at 4.)

8                    **STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS**

9           An application for a writ of habeas corpus by a person in custody under a judgment of a state

10  court can be granted only for violations of the Constitution or laws of the United States.  28

11  U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

12  application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502

13  U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

14          Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

15  corpus relief:

16                  An application for a writ of habeas corpus on behalf of a person in
                    custody pursuant to the judgment of a State court shall not be
17                  granted with respect to any claim that was adjudicated on the merits
                    in State court proceedings unless the adjudication of the claim –
18
                    (1) resulted in a decision that was contrary to, or involved an
19                  unreasonable application of, clearly established Federal law, as
                    determined by the Supreme Court of the United States; or
20
                    (2) resulted in a decision that was based on an unreasonable
21                  determination of the facts in light of the evidence presented in the
                    State court proceeding.
22

23          For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings

24  of the United States Supreme Court at the time of the last reasoned state court decision.  Greene v.

25  Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing

26  Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "'may be persuasive

27  in determining what law is clearly established and whether a state court applied that law

28  unreasonably.'"  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir.

                                                        6

2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct."  Id. at 1451.  Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue.  Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-06).  "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'"  Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (Internal citations and quotation marks omitted.)).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court

////

was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103.

There are two ways a petitioner may satisfy subsection (d)(2). <u>Hibbler v. Benedetti</u>, 693 F.3d 1140, 1146 (9th Cir. 2012). He may show the state court's findings of fact "were not supported by substantial evidence in the state court record" or he may "challenge the fact-finding process itself on the ground it was deficient in some material way." <u>Id.</u> (citing <u>Taylor v. Maddox</u>, 366 F.3d 992, 999-1001 (9th Cir. 2004)); <u>see also</u> <u>Hurles v. Ryan</u>, 752 F.3d 768, 790-91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.). Under the "substantial evidence" test, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th Cir. 2012).

The second test, whether the state court's fact-finding process is insufficient, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." <u>Hibbler</u>, 693 F.3d at 1146-47 (quoting <u>Lambert v. Blodgett</u>, 393 F.3d 943, 972 (9th Cir. 2004)). The state court's failure to hold an evidentiary hearing does not automatically render its fact finding process unreasonable. <u>Id.</u> at 1147. Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility." <u>Perez v. Rosario</u>, 459 F.3d 943, 951 (9th Cir. 2006) (citing <u>Nunes v. Mueller</u>, 350 F.3d 1045, 1055 (9th Cir. 2003)).

If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews the merits of the claim de novo. <u>Delgadillo v. Woodford</u>, 527 F.3d 919, 925 (9th Cir. 2008); <u>see also</u> <u>Frantz v. Hazey</u>, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised."). For the claims upon which petitioner seeks to present evidence, petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim

in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding.  See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the reasoning of the last decision.'"  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely."  Id. at 99-100 (citing Ylst, 501 U.S. at 803).  Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013).

A summary denial is presumed to be a denial on the merits of the petitioner's claims.  Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853 (citing Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir. 2000)).  This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court."  Richter, 562 U.S. at 102.  The petitioner bears "the burden to demonstrate that 'there was no

1  reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir.

2  2013) (quoting Richter, 562 U.S. at 98).

3      When it is clear, however, that a state court has not reached the merits of a petitioner's claim,

4  the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court

5  must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099,

6  1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

7                          **PETITIONER'S CLAIMS**

8      Petitioner references attachment A to his petition for his claims. (FAP (ECF No. 8 at 47, et

9  seq.).) His first claim is a copy of the argument in his petition for review to the California

10 Supreme Court that the trial court erred when it denied his motion for a new trial and some

11 additional argument. (Id. at 47-55.) His subsequent claims appear to be identical to those raised

12 in his state habeas petitions –multiple claims of ineffective assistance of trial counsel, ineffective

13 assistance of appellate counsel, prosecutorial misconduct, and violation of the Confrontation

14 Clause. (Id. at 56-84.) Each is addressed below.

15 **I.      Denial of Motion for a New Trial**

16     The victim, Dena Marks (hereafter "Dena") did not testify at trial because the prosecution was

17 unable to locate her. Evidence was presented at trial that petitioner spoke with Dena on the phone

18 several months before trial and told her that if she did not come to court, the prosecution would

19 not have a case. Defendant told her, "[d]on't say nothin" and "don't even come in the courtroom."

20 At trial, evidence was presented about Dena's original story to police – that petitioner kidnapped

21 and beat her – and about her various recantations of that story.

22     Just days after the conclusion of trial, Dena contacted petitioner's trial attorney. (See Mot. for

23 New Trial at 6 (CT 374).) She told him she had been angry at petitioner and had inflicted her

24 injuries herself. Based on this new recantation, petitioner sought a new trial to allow Dena to

25 testify in person. The trial court denied the motion. The trial judge concluded that Dena's new

26 story was not "reliable, trustworthy or credible." (RT 535.) He further concluded that the new

27 evidence was cumulative and would not change the result on any retrial. (RT 535-36.)

28 ////

1    **A. State Court Decision**

2       The decision of the California Court of Appeal is the last reasoned decision of the state courts.

3    The Court of Appeal held:

4            Defendant's motion for a new trial was based on a posttrial
             notarized declaration by Dena which stated: "To whom it may
5            concern I Dena Marks am very sorry for all the trouble I put
             Michael Marks threw by lieing on him First of all Mr. Marks never
6            hit me I had hurt myself and cut my hand as well I was on a high
             dose of pain killers ant Fentenal patches and also street drugs I was
7            totaly outa control I thought he used me and went back to his x wife
             so I was very hurt and with the drugs and my deppresson it all
8            turned to anger and not let him be with any other women but me Im
             sorry for lieing Please forgive my actions."
9
             The trial court denied defendant's motion, concluding that the
10           declaration was not credible, hearing yet another explanation from
             Dena would add little to the case, and admission of the declaration
11           would not change the result on retrial.

12           The determination of a motion for a new trial rests so completely
             within the court's discretion that its action will not be disturbed
13           unless a manifest and unmistakable abuse of discretion clearly
             appears. (*People v. Howard* (2010) 51 Cal.4th 15, 42–43.) In ruling
14           on a motion for a new trial based on newly discovered evidence, the
             trial court considers the following factors: whether (1) the evidence
15           was newly discovered, (2) the evidence was not cumulative, (3)
             admission of the evidence could render a different result probable
16           on a retrial of the cause, (4) the party could not with reasonable
             diligence have discovered and produced the evidence at the trial,
17           and (5) these facts were shown by the best evidence of which the
             case admits. (Id. at p. 43.) The trial court may also consider the
18           credibility of the evidence in order to determine whether its
             introduction in a new trial would render a different result
19           reasonably probable. (*Ibid.*) Each case is judged on its own facts.
             (*Ibid.*) And the trial court presumes the verdict is correct. (*People v.*
20           *Davis* (1995) 10 Cal.4th 463, 524.)

21           The fact that an important prosecution witness has recanted does
             not necessarily compel the granting of a motion for a new trial.
22           (*People v. Langlois* (1963) 220 Cal.App.2d 831, 834.) In fact, a
             posttrial retraction is looked upon with suspicion. (*Ibid.*) In such a
23           case, the trial court weighs the evidence offered in support of the
             motion, and the trial court may reject the recantation if it is
24           unworthy of belief. (*Ibid.*)

25           Here, the trial court determined that Dena's declaration was not
             worthy of credence. It pointed out that Dena was eager to help
26           defendant. She recanted her statement to police and blamed Terry
             Stephens for her injuries at the preliminary hearing. When
27           defendant was held to answer despite her preliminary hearing
             testimony, she absented herself from the trial after she and
28           defendant discussed how her nonappearance would help defendant's

case. "Conveniently or miraculously, notwithstanding an outstanding bench warrant and her failure to appear [at the trial], after the verdict, she reappears in short order, with yet a third story of what happened in the case." The trial court said the statements Dena provided on November 24, under stress or excitement, were more reliable and trustworthy.

The trial court was well within its discretion to find Dena's posttrial declaration not credible. (*People v. Delgado* (1993) 5 Cal.4th 312, 328–329 [posttrial statement by a witness that she, not defendant, was responsible for the victims' injuries lacked credibility in light of the witness's "obvious continued attachment to defendant" and other evidence contradicting her posttrial statement]; *People v. Langlois*, *supra*, 220 Cal.App.2d. at pp. 834–835 [posttrial recantation by prosecution witness not credible where witness claimed to be in love with defendant and desired to help him avoid punishment].) Dena told medical personnel and police officers, close to the time of the attack, that defendant was responsible for her injuries. Her report was corroborated in part by defendant's mother and evidence in defendant's bedroom. The statement by Dena's mother that defendant was "crazy" because he thought Dena was cheating on him provided a possible motive for the November 23 attack. Dena changed her story after she had contact with defendant on November 26. Consistent with her professions of love for defendant, all of the stories Dena told after November 26 exonerated defendant. Moreover, two days after the jury rendered verdicts against defendant, Dena contacted defendant's attorney and offered to provide a notarized statement confessing that her injuries were self-inflicted and defendant "never laid a finger" on her.

The trial court also found Dena's posttrial declaration to be cumulative, because the jury already heard Dena recant her complaint against defendant and blame someone else for the attack, and already heard that Dena had lied. The record supports these findings. Additionally, there was evidence presented at defendant's trial that Dena was heavily medicated and she was motivated by jealousy when she first reported the assault. Hearing those facts again would not likely render a different result at a retrial.

Defendant claims Dena's injuries were not consistent with her report of a beating, but were instead consistent with self-inflicted injuries. However, the emergency room doctor who treated Dena testified as an expert on emergency medicine and indicated that Dena's injuries were consistent with Dena's statements at the hospital.

On this record, the trial court did not abuse its discretion in denying the motion for retrial.

Marks, 2013 WL 6327418, at *6-7.

////

////

12

**B. Analysis of Claim re Denial of Motion for a New Trial**

Petitioner does not allege that the trial court's denial of his motion violated any specific federal constitutional right. Petitioner encouraged the California Supreme Court to grant review "for the purpose of establishing a fair and equitable rule as to when a new trial motion should be granted." (LD 5 at 2.) In that petition, and here, petitioner relies solely upon state case law holding that newly discovered evidence could be the basis for habeas relief where it is "credible" and "undermines the entire case of the prosecution." In re Hall, 30 Cal. 3d 408, 417 (1981); see also People v. Gonzalez, 51 Cal. 3d 1179, 1246 (1990) ("[A] criminal judgment may be collaterally attacked on the basis of "newly discovered" evidence only if the "new" evidence casts fundamental doubt on the accuracy and reliability of the proceedings. At the guilt phase, such evidence, if credited, must undermine the entire prosecution case and point unerringly to innocence or reduced culpability.")

Even if petitioner's state-court petition can be construed as raising a federal claim, and the California Supreme Court decision can be construed as denying review of that claim, petitioner fails to demonstrate a basis for habeas relief.

Petitioner's claim of actual innocence based on the newly discovered evidence has "never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993); see also McQuiggin v. Perkins, 133 S. Ct. 1924 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.") (citing Herrera, 506 U.S. at 404-05); Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 71 (2009) (Whether there exists a federal constitutional right to be released upon proof of "actual innocence" is an open question.) Therefore, assuming the Court of Appeal addressed, and rejected, that issue, such rejection was not contrary to, or an unreasonable application of, clearly established federal law "as determined by the Supreme Court of the United States." See Acuna v. Ducart, No. CV 14-5664-RGK (RZ), 2015 WL 1809244, at *1 (C.D. Cal. Apr. 14, 2015) (freestanding claim of actual innocence not cognizable on habeas).

////

Even assuming that freestanding actual innocence claims based on newly discovered evidence can state a ground for federal habeas relief, a "'habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent.'" Jackson v. Calderon, 211 F.3d 1148, 1164 (9th Cir. 2000) (quoting Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997)). Newly discovered evidence is a ground for habeas corpus relief only when it bears on the constitutionality of an applicant's conviction and would "probably produce an acquittal." Swan v. Peterson, 6 F.3d 1373, 1384 (9th Cir. 1993); see also Spivey v. Rocha, 194 F.3d 971 (9th Cir. 1999) (new evidence that witnesses may have lied about whether shooting victims were armed did not undermine structure of prosecution's case).

Thus, at a minimum, petitioner must show that the new evidence "would be sufficient to establish by clear and convincing evidence that . . . no reasonable factfinder would have found [him] guilty of the underlying offense." West v. Ryan, 652 F.3d 1071, 1081 (9th Cir. 2011) (internal quotations and citations omitted). Petitioner has not met this burden. As explained by the Court of Appeal, petitioner shows only that the victim made one additional recantation. The jury heard the victim's other recantations during trial and defendant's instruction to her not to come to testify. In addition, the victim's statement to police was not the only evidence identifying petitioner as her assailant. The jury heard testimony that the day after the assault, petitioner's mother told officers, "It's my son. I don't know anything." In addition, evidence at petitioner's mother's house corroborated Dena's testimony. The fact of one additional recantation from a domestic violence victim is not the sort of clear and convincing evidence of innocence required to establish "actual innocence." For these reasons, petitioner's claim of trial court error in the denial of his motion for a new trial should be denied.

## II.     Ineffective Assistance of Counsel Claims

Petitioner makes the following claims of ineffective assistance of trial counsel (1) Claims 2 and 3 - failure to investigate and present evidence; (2) Claim 4 - failure to request DNA testing of a knife; (3) Claim 5 - failure to investigate and hire an expert regarding the victim's psychiatric disorders and other health problems; (4) Claim 7 - failure to research the law regarding the

sentencing enhancement; (5) Claim 8 - failure to conduct pre-trial investigation and urging

petitioner to go to trial; and (6) Claim 9 - failure to investigate (crime scene and police report),

call witnesses, hire a private investigator, and request photos.  In addition, in claim 11, petitioner

argues that his appellate counsel failed to raise claims based on evidence petitioner provided him.

### A.  Applicable Legal Standards

To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) his

counsel's performance was deficient and that (2) the "deficient performance prejudiced the

defense." Strickland v. Washington, 466 U.S. 668, 687 (1984).  Counsel is constitutionally

deficient if his or her representation "fell below an objective standard of reasonableness" such

that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at

687–88 (internal quotation marks omitted).  "Counsel's errors must be 'so serious as to deprive

the defendant of a fair trial, a trial whose result is reliable.'" Harrington v. Richter, 562 U.S. 86,

101, 104 (2011) (quoting Strickland, 466 U.S. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669; see Richter, 562

U.S. at 107.  Reviewing courts must also "indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

This presumption of reasonableness means that the court must "give the attorneys the benefit of

the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel

may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 195 (2011)

(internal quotation marks and alterations omitted).

Prejudice is found where "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Strickland, 466

U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

outcome." Id.  "The likelihood of a different result must be substantial, not just conceivable."

Richter, 562 U.S. at 112.  A reviewing court "need not determine whether counsel's performance

was deficient before examining the prejudice suffered by the defendant as a result of the alleged

15

deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697), amended and superseded on other grounds, 385 F.3d 1247 (9th Cir. 2004); United States v. Ray, No. 2:11-cr-0216-MCE, 2016 WL 146177, at *5 (E.D. Cal. Jan. 13, 2016) (citing Pizzuto, 280 F.3d at 954).

**B.  Ineffective Assistance of Trial Counsel**

**1.  Decision of the State Court**

The state superior court issued a reasoned decision in its rejection of petitioner's claims. Because the Court of Appeal and California Supreme Court summarily rejected petitioner's claims, the decision of the superior court is the "last reasoned decision" of a state court and the one considered here. See Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011).

> To show ineffective assistance of counsel, petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. (*Harris*, *supra*, 5 Cal.4th at 832-833; *Strickland v. Washington* (1984) 466 U.S. 668, 687-688.) Generally, appellate counsel performs "properly and competently when he or she exercises discretion and presents only the strongest claims instead of every conceivable claim." (*In re Robbins* (1998) 18 Cal.4th 770, 810.) It is not a court's duty to second-guess counsel and great deference is given to an attorney's tactical decisions. (*In re Avena* (1996) 12 Cal.4th 694, 722.)

> More importantly, the petitioner must show actual prejudice, meaning that there is a reasonable probability that, but for the attorney's error(s), the result would have been different. (*Strickland v. Washington*, *supra*, 466 U.S. at 694.) If no prejudice is established, it is unnecessary to determine whether counsel's performance was deficient. (*In re Fields* (1990) 51 Cal.3d 1063, 1079.)

> First, Petitioner makes several claims that counsel was ineffective for failing to investigate and present evidence that undermined the victim's credibility. He alleges that his attorney should have fought the court's decision to exclude evidence of the victim's December 13, 2010 arrest because evidence from that case was important to show her ability to lie to police and the type of behavior of which she was capable. Petitioner also claims that his attorney should have retained an expert to review the victim's mental health issues since she suffered from conditions that might cause her to hallucinate or make up stories. He further contends that his attorney should have requested a DNA test on the knife allegedly used in the crime as he believes the victim's reported wound was actually the result of her conducting her blood glucose tests on her hand. Lastly he argues that his counsel erred in not introducing an arrest report from

Nevada, in which the victim accused the defendant of holding her against her will. He claims the arrest report was imperative to refute the prosecution's theory that the victim later recanted her accusations against him because she loved him. He also argues that it would have shown that he was never formally charged with kidnapping in Nevada following that arrest, which proves that the victim makes false allegations against him.

However, petitioner fails to show that but for the purported errors listed above, the outcome would have been different. During the trial the jury heard evidence that the victim initially told law enforcement that petitioner assaulted her and kidnapped her, that she later recanted her story, and instead provided an ever-changing account of the events in question and who was involved in each version. Thus, the jury was presented with and considered evidence raising questions regarding the victim's credibility and what happened, but ultimately made a finding of guilt. As such, he has failed to show how this reportedly omitted evidence would have changed those findings. Accordingly, there is no showing that these errors were prejudicial.

Additionally, he claims his attorney erred in allowing his burglary case to be tried separately following the domestic violence case. The victim was arrested for a 2009 burglary and implicated Petitioner as an accomplice. He alleges that had his attorney done a thorough investigation on the burglary charges, counsel would have found evidence showing that the victim fabricated accusations in that case, too. Because the burglary case was trailed and later dropped by the prosecution following his conviction in this case, he claims he was deprived of the opportunity to present evidence showing the victim [was] tried "to set me up." But again, the jury was already presented with ample evidence undermining the victim's credibility. Even if evidence from the burglary case proved the victim was a liar, it would have been cumulative. Furthermore, given that the pre-trial motions show that the prosecution indicated that it would use evidence from the burglary case to show motive – i.e. that the assault was done in retaliation for the victim implicating him in that case – it was not unreasonable for Petitioner's attorney to move to have the burglary case tried separately and any evidence from it excluded.

He also claims that his attorney was ineffective for failing to properly investigate leads that he provided to him. This argument also fails due to lack of prejudice. A petitioner alleging ineffective assistance of counsel based on the failure to obtain favorable evidence must show what evidence should or could have been obtained and what effect it would have had. (*People v. Geddees* (1991) 1 Cal.App.4th 448, 454.) Petitioner claims he told his attorney about inconsistencies in the victim's statements to police, which counsel did not investigate or sufficiently point out at trial. For example, he points out that the victim's actions were inconsistent with a kidnapping. The victim told police she did not leave the car when they stopped for gas because he threatened to hurt her daughter, but he argues that a real kidnapping victim in fear for her life would have tried to escape and flag down help. Another

example he provides is the victim's 250 pound size and that his attorney never measured the closet to see if she fit in the closet that Petitioner allegedly locked her in. However, the leads raised by Petitioner are speculative and do not point unerringly to his innocence.

As to petitioner's claims that counsel failed to properly research the law on enhancements, the appellate court struck the Penal Code section 667.9 enhancement at issue. Accordingly, the claim is moot.

(Ex. B to Answ. (ECF No. 18) at 1-3.)

### 2.   Analysis of Petitioner's Claims of Ineffective Assistance of Trial Counsel

#### a.   Failure to Investigate and Present Evidence

In his first two ineffective assistance of counsel claims, petitioner alleges trial counsel failed to investigate and present evidence to challenge Dena's credibility. First, petitioner alleges counsel should have introduced a Nevada police report showing that on April 15, 2010, Dena told police petitioner had kidnapped her and threatened her. (See FAP (ECF No. 8 at 56-58).) According to petitioner, this evidence would have contradicted the prosecution's theory that Dena was changing her story only to exculpate him. And, because petitioner was never charged as a result of the Nevada case, petitioner contends that would have shown other instances in which Dena made false charges against him. However, the fact that petitioner was not charged in Nevada does not establish that the charges were false. In fact, an argument could have been made that a likely reason was that Dena, again, changed her story, and officials in Nevada decided not to pursue the case. Further, the evidence could very well have been considered by the jury as additional proof that plaintiff abused Dena. A decision not to present that evidence was not unreasonable.

Second, plaintiff contends counsel should have made an effort to introduce evidence that on December 13, 2010 Dena stabbed Blancy Adams. (See id. at 59-62.) Plaintiff contends the evidence would "impeach Dena with moral turpitude" and establish that Dena did not appear for trial because she was fleeing that arrest warrant. Plaintiff also contends Dena's attempts to "look innocent" after the stabbing could have been used by his attorney to show Dena could change her appearance, and thus may have done so to convince people that petitioner had attacked her.

////

In the motion for a new trial, petitioner's trial attorney argued that the trial court's refusal to permit the evidence of the stabbing of Blancy Adams was grounds for a new trial. The attorney added a comment that, in the alternative, his failure to make a motion at trial challenging the trial court's ruling was ineffective assistance of counsel. (RT 525-26.) The court responded, "Go for the incorrect ruling, because you at least raised the issue with the Court and counsel. And I told you that I would not allow it." (RT 526.) In other words, the trial court felt petitioner's trial attorney had properly raised the issue for the court's consideration. Accordingly, petitioner's claim that counsel failed to raise the issue lacks a factual basis.

### b. Failure to Have Knife Tested

Petitioner next contends his trial attorney erred when he failed to request DNA testing of the knife Dena claimed petitioner used to cut her hand. (FAP (ECF No. 8 at 63-64).) Petitioner states that he asked counsel to have the knife tested, and told him the cut on Dena's hand could have been one she inflicted to check her blood sugar level, but his trial attorney told him that the judge would not grant such a motion. As support for this argument, petitioner presents an order from the superior court granting petitioner's request for appointment of an attorney to determine whether a motion for DNA testing of the knife was appropriate. (Ex. J to FAP (ECF No. 8 at 204-208).) However, the court's grant of the request was contingent upon the availability of funding for habeas discovery under California Penal Code § 1405. Apparently, counsel was not appointed, no motion was made, and the knife was never tested.

Petitioner does not explain what DNA testing might have shown that would have exculpated him. The superior court's contingent grant of funding for the appointment of an attorney simply to determine whether a motion for DNA testing might be appropriate is a far cry from a holding that DNA testing was, in fact, appropriate, nor does it say anything about what that DNA testing might have shown. Petitioner fails to show any prejudice from the lack of DNA testing of the knife.

### c. Failure to Present Evidence of Victim's Health Problems

Petitioner next contends that his trial attorney should have hired an expert to testify about Dena's mental, emotional, and physical disorders. (FAP (ECF No. 8 at 65-68).) Primarily,

petitioner alleges Dena has mental health disorders that cause her to suffer from, among other things, auditory and visual hallucinations, paranoia, and suicidal thoughts. He also contends Dena had opiates and benzodiazepine in her system when she was tested at the hospital after the assault. He argues these problems could have caused Dena to lie, and caused her to be itchy, which resulted in the scratches to her face.

The jury did hear evidence at trial that Dena was taking a large number of medications at the time of the assault. At the preliminary hearing, Dena testified that in 2009 she was taking about 60 different medications every day, a third of which were for mental disorders. (RT 211.) She testified that those medications caused her to have memory problems. (Id.)

In addition, the jury heard evidence that the day after the assault, when she was in the hospital, Dena did not appear to be having problems with memory or any other mental health issues. The emergency room doctor who saw Dena when she was taken to the hospital conducted a "standard" psychiatric exam. (RT 317.) She testified that Dena exhibited "normal judgement," nothing indicated she was hallucinating or that she was intoxicated by her pain medication. (RT 317, 320.) Officer Henderson interviewed Dena at the hospital. He found her to be "lucid" and testified that she appeared to be "thinking clearly." (RT 242.)

In the face of this evidence of Dena's demeanor and mental status when she was seen at the hospital immediately after the assault, petitioner fails to show a reasonable probability that evidence of Dena's health problems would have caused the jury to find Dena's statements made at that time to be unbelievable. The state court's determination that petitioner failed to show prejudice from any failure of counsel to present testimony regarding Dena's health was not contrary to or an unreasonable application of federal law or an unreasonable determination of the facts.

### d. Failure to Research the Law re Sentence Enhancement

Petitioner argues here that his trial attorney rendered ineffective assistance when he failed to successfully defend against the charged sentencing enhancement for a developmentally disabled victim. (FAP (ECF No. 8 at 71).) On appeal, the Court of Appeal struck the sentencing enhancement as unsupported by sufficient evidence. See People v. Marks, No. C069757, 2013

1  WL 6327418, at *5 (Cal. Ct. App. 2013).

2      Petitioner contends that he was prejudiced at trial by the prosecution "painting a picture that

3  Dena was developmentally disabled." However, petitioner fails to show what his trial attorney

4  should have done. Whether or not the jury concluded that Dena met the statutory definition of a

5  "developmentally disabled" victim, the jury would still have heard evidence about Dena's various

6  disabilities, including her lack of one leg, diabetes, congestive heart failure, kidney failure,

7  asthma, heart attacks, and strokes. See id. Petitioner fails to show how his attorney acted

8  unreasonably or how any such conduct prejudiced him.

9                    **e.    Moving to Exclude Burglary Case**

10     In claim 8, petitioner argues that had his lawyer investigated the burglary charge, he would

11 have concluded that Dena lied about petitioner's involvement in that case. Therefore, he should

12 have sought to combine the two trials. (FAP (ECF No. 8 at 72-74).) According to petitioner, had

13 the jury heard evidence about the burglary charge, they would have known that Dena had a habit

14 of lying to implicate him. Petitioner also argues that the burglary case would have shown Dena's

15 motive to lie about the assault. However, petitioner does not explain why this is so. In fact,

16 according to petitioner's trial attorney's motion to exclude evidence of the burglary case, the

17 prosecutor intended to use the burglary case, and Dena's identification of petitioner as her co-

18 perpetrator in that case, to show that petitioner assaulted Dena in retaliation. (See CT 214-17.) A

19 reasonable attorney could certainly have determined that any possible benefit from allowing

20 evidence of the burglary case was outweighed by the potential for the prosecutor to argue it

21 provided a motive. Petitioner fails to show his attorney acted unreasonably.

22                    **f.    Failure to Investigate Crime Scene, Etc.**

23     In claim 9, petitioner alleges his trial attorney failed to: (i) investigate by going to the crime

24 scene and by reading a police report, (ii) call witnesses, (iii) hire a private investigator, and (iv)

25 request photos. (FAP (ECF No. 8 at 75-79).) For the most part, petitioner fails to show what the

26 result would have been had counsel conformed to these expectations. Petitioner does not describe

27

28

the photos except to say they were of Dena and of the scene of the assault,[3] explain what a private investigator would have found, explain what testimony Robert Garcia, who was at petitioner's mother's house, could give, or explain what any investigation into Dena's story that Terry Stevens assaulted her would have shown.

Therefore, petitioner fails to establish any prejudice as a result of his attorney's failure to conduct these investigations. To the extent petitioner claims his attorney should have made additional arguments, those arguments are not evidence and many of petitioner's points are points a jury could have considered. For example, a jury would certainly have considered whether Dena's story about being afraid to flee because of petitioner's threats to her daughter was reasonable. Finally, petitioner's argument that the attorney who represented him at the preliminary hearing failed to accept a voicemail recording from his mother lacks prejudice because that recording was played during trial.

### C. Ineffective Assistance of Appellate Counsel

Petitioner argues his appellate counsel should have raised a number of issues which he raised in his state habeas petitions, some of which are based on extra-record evidence. (FAP (ECF No. 8 at 83-84).)

### 1. State Court Decision

> Petitioner claims his appellate counsel was deficient for refusing to file an appeal on the grounds that the court wrongly excluded evidence of the victim's subsequent December 2010 arrest for an unrelated crime, the verdict was contrary to the evidence, and in regards to the victim's absence at trial. He also contends that his attorney refused to submit evidence that would prove his innocence.
>
> Petitioner appears to misunderstand that an appeal is not an opportunity to relitigate the case. Thus, it was proper for counsel to decline presenting claims based on evidence outside the record. In

---

[3] Petitioner filed a "motion for an evidentiary hearing" here in August 2016. (ECF No. 24.) Therein, petitioner stated that he had just received copies of these photos and they show a number of things that could be considered contrary to Dena's story to police. This court denied petitioner's motion as premature. (See ECF No. 27.) The court may not consider the evidence at this juncture. It is clear from petitioner's motion that this photo evidence was not presented to the state court. As set out above, when considering whether petitioner meets one of the gateway standards of 28 U.S.C. § 2254(d), this court is limited to the record that was before the state court. Therefore, this court may not consider here petitioner's allegations about this new evidence.

addition, it is proper for counsel to exercise discretion and present "only the strongest claims instead of every conceivable claim." (*In re Robbins, supra*, 18 Cal 4th at 810.) Likewise, counsel is not required to present claims without merit. Here, petitioner's attorney did file an appeal which included the arguments that there was insufficient evidence to support one of the five counts, and that it was improper to deny a new trial given the victim's absence during trial and sudden reappearance before judgment and sentencing. Petitioner has not shown there were grounds to challenge the sufficiency of the evidence supporting the other four counts. In addition, as discussed above, the evidence from the victim's arrest for an unrelated crime was cumulative and petitioner has not shown that its exclusion was prejudicial.

(Ex. B to Answ. (ECF No. 18) at 4.)

### 2. Analysis of Ineffective Assistance of Appellate Counsel Claim

In response to petitioner sending a package of materials to him, petitioner's appellate lawyer wrote petitioner to inform him that he could not raise those issues on appeal. (Ex. R to FAP (ECF No. 8 at 325).) The state court agreed that petitioner's claims involving extra-record evidence could only be raised in a habeas petition. To the extent petitioner argues appellate counsel should have raised the claims about the exclusion of evidence that Dena stabbed Blancy Adams and confrontation clause issues, those claims were raised in his state habeas petition where they were considered and rejected. Accordingly, petitioner cannot show prejudice from his appellate attorney's failure to raise them because he cannot show those issues would have been successful on appeal. Petitioner's claim of ineffective assistance of appellate counsel should be denied.

### III. Prosecutor's Violation of <u>**Brady v. Maryland**</u>

Petitioner claims the prosecutor failed to disclose a video showing Dena and her teenage daughter shoplifting merchandise from a store. (FAP (ECF No. 8 at 69-70).) Petitioner contends the lack of this evidence was particularly prejudicial because the jury did not hear evidence that Dena had committed other crimes, such as attempting to murder Blancy Adams.

### A. Legal Standards

In <u>Brady v. Maryland</u>, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the

prosecution." 373 U.S. 83, 87 (1963); see also Bailey v. Rae, 339 F.3d 1107, 1113 (9th Cir. 2003).  The duty to disclose such evidence is applicable even though there has been no request by the accused, United States v. Agurs, 427 U.S. 97, 107 (1976), and encompasses impeachment evidence as well as exculpatory evidence, United States v. Bagley, 473 U.S. 667, 676 (1985).

A Brady violation may also occur when the government fails to turn over evidence that is "known only to police investigators and not to the prosecutor." Youngblood v. West Virginia, 547 U.S. 867, 870 (2006) (quoting Kyles v. Whitley, 514 U.S. 419, 437 (2006)). "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles, 514 U.S. at 437.  To prove a Brady violation, a petitioner must show three things: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999); see also Banks v. Dretke, 540 U.S. 668, 691 (2004); Silva v. Brown, 416 F.3d 980, 985 (9th Cir. 2005).

A defendant is prejudiced by a Brady violation if the undisclosed evidence is material. Strickler, 527 U.S. at 288-89.  Evidence is material if "'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." Id. at 289. "The question is not whether petitioner would more likely than not have received a different verdict with the evidence, but whether "in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Id. (quoting Kyles, 514 U.S. at 434); see also Silva, 416 F.3d at 986 ("a Brady violation is established where there 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'")  "Materiality pertains to the issue of guilt or innocence, and not to the defendant's ability to prepare for trial." Agurs, 427 U.S. at 112 n. 20.  Once the materiality of the suppressed evidence is established, no further harmless error analysis is required. Kyles, 514 U.S. at 435-36; Silva, 416 F.3d at 986.  "When the government has suppressed material evidence favorable to the defendant, the conviction must be set aside." Silva, 416 F.3d at 986.

////

### B. State Court Decision

Because this claim was raised in petitioner's state habeas petitions, this court looks to the superior court's reasoned decision denying this claim.

> The prosecution has the duty to disclose any material exculpatory evidence to the defense. (Pen. Code, § 1054.1(e); *Brady v. Maryland* (1963) 373 U.S. 83.) The failure to disclose *Brady* evidence is only prejudicial if the evidence was "material" – meaning that there is a reasonable probability of a different result. (*People v. Kasim* (1997) 56 Cal.App.4th 1360, 1382.) Another manner of evaluating the prejudice is whether the failure to disclose undermined confidence in the verdict. (*Kyles v. Whitley* (1995) 514 U.S. 419, 434.)

> Petitioner challenges that the prosecution failed to produce copies of a surveillance video from July 15, 2010, which purportedly showed the victim and her daughter shoplifting from a store. Again, petitioner fails to show that this video footage was material or exculpatory. He argues that this evidence would have shown that the victim was not a trustworthy person, but the jury had already been presented evidence of the inconsistencies in the victim's story. Evidence of an unrelated crime that occurred eight months after the incident for which he was convicted would not add material new facts to this case nor does it convincingly show that the petitioner did not commit the crime.

(Ex. B to Answ. (ECF No. 18) at 4-5.)

### C. Analysis of **Brady** Claim

Petitioner fails to show evidence of shoplifting would have materially impeached Dena. A video showing that months after the assault Dena and her daughter may have stolen things from a store bears no relevance to Dena's story about the assault. Further, it would have done little to impeach Dena's general credibility given her differing stories of the assault. It cannot be said that no fairminded jurist could find that the failure to provide the defense with video evidence that Dena and her daughter shoplifted was not prejudicial.

### IV. Confrontation Clause Violation

Petitioner contends that his inability to cross-examine Dena at trial and prior to the denial of his new trial motion violated his rights under the Confrontation Clause. (FAP (ECF No. 8 at 80-82); Traverse (ECF No. 20) at 6.)

////

## A. Legal Standards

The Sixth Amendment to the United States Constitution grants a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. "The 'main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" Fenenbock v. Dir. of Corrs. for Calif., 692 F.3d 910, 919 (9th Cir. 2012) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986)).

In 2004, the United States Supreme Court held that the Confrontation Clause bars the state from introducing into evidence out-of-court statements which are "testimonial" in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable. Crawford v. Washington, 541 U.S. 36 (2004). The Crawford rule applies only to hearsay statements that are "testimonial" and does not bar the admission of non-testimonial hearsay statements. Id. at 42, 51, 68; see also Whorton v. Bockting, 549 U.S. 406, 420 (2007) ("[T]he Confrontation Clause has no application to" an "out-of-court nontestimonial statement.")

Confrontation Clause violations are subject to harmless error analysis. Whelchel v. Washington, 232 F.3d 1197, 1205–06 (9th Cir. 2000). "In the context of habeas petitions, the standard of review is whether a given error 'had substantial and injurious effect or influence in determining the jury's verdict.'" Christian v. Rhode, 41 F.3d 461, 468 (9th Cir. 1994) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)). Factors to be considered when assessing the harmlessness of a Confrontation Clause violation include the importance of the testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony, the extent of cross-examination permitted, and the overall strength of the prosecution's case. Van Arsdall, 475 U.S. at 684.

## B. State Court Decision

Petitioner raised this issue in his state habeas petitions. The superior court held that the claim was procedurally barred because petitioner has already raised it on appeal.

> Petitioner argues that his Sixth Amendment right to confront his accusers was violated because he was not presented the opportunity to cross-examine the victim during trial and the trial court did not

allow her to testify before issuing its ruling on the motion for new trial.

Habeas corpus cannot serve as a substitute appeal. Issues that were actually raised and litigated on appeal may not be revisited on habeas corpus. (*In re Terry* (1971) 4 Cal.3d 911, 927; *In re Waltreus* (1965) 62 Cal.2d 218, 225.) As petitioner raised these same arguments in his appeal, they cannot be addressed through a petition for writ of habeas corpus.

(Ex. B to Answ. (ECF No. 18) at 5.)

However, a review of petitioner's state appellate briefs, the Court of Appeal's decision, and his petition for review to the California Supreme Court shows that petitioner did not raise a Confrontation Clause issue in his appeal. Therefore, the superior court's determination was incorrect and no state court reviewed petitioner's Confrontation Clause claim on its merits. In this situation, this court cannot conduct a review of the state court decision under 28 U.S.C. § 2254(d) and must review petitioner's claim de novo. See Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011); Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

**C. Analysis of Confrontation Clause Claim**

In his petition, it is not entirely clear what petitioner is challenging. However, in his traverse, petitioner makes clear that he is alleging a violation of his Confrontation Clause rights both at trial and with respect to his motion for a new trial. The superior court interpreted petitioner's claim as alleging these two issues. Yet, respondent addresses only petitioner's argument that the trial court should have allowed Dena to testify before ruling on the new trial motion. Respondent argues that the Sixth Amendment right to confront witnesses is limited to a criminal prosecution. According to respondent, petitioner's argument that the trial judge should have allowed Dena's testimony in considering the motion for a new trial seeks a new rule of law, which would be barred by Teague v. Lane, 489 U.S. 288 (1989). This court addresses both issues raised by petitioner below.

////

////

27

### 1. Violation of Right to Confront Accuser at Trial

As described above, under <u>Crawford</u>, testimonial hearsay is barred unless (1) the witness is unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness. 541 U.S. at 59. Prior testimony at a preliminary hearing is considered testimonial hearsay. <u>Id.</u> at 68. As explained by the Supreme Court, a finding of unavailability requires that "the prosecutorial authorities have made a good-faith effort to obtain [the witness's] presence at trial." <u>Barber v. Page</u>, 390 U.S. 719, 725 (1968). If the effort was made in good-faith, then the next question is whether the defendant had a prior opportunity to cross-examine the witness. The Supreme Court has held that "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." <u>Van Arsdall</u>, 475 U.S. at 679 (quoting <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20 (1985) (per curiam)).

That a defendant was unable to impeach a witness with evidence that he obtained after the preliminary hearing does not render the cross-examination ineffective for purposes of the Confrontation Clause: the testimony the jury actually heard was fully subject to cross-examination at the preliminary hearing. <u>See</u> <u>Delgadillo v. Woodford</u>, 527 F.3d 919, 926 (9th Cir. 2008) (testimony of unavailable witness given at a preliminary hearing was admissible at trial); <u>see also</u> <u>Perez v. McDonald</u>, No. CV 11-5724-GHK (RNB), 2012 WL 1986294, at *13 (C.D. Cal. Feb. 27, 2012) ("[I]n a number of post-<u>Crawford</u> cases, the Ninth Circuit has held that a state court did not unreasonably apply clearly established Supreme Court law in rejecting a Confrontation Clause claim directed to the admission of an unavailable witness's preliminary hearing testimony.") (citing, inter alia, <u>Smith v. Harrison</u>, 378 F. App'x 767 (9th Cir. 2010) and <u>Rust v. Hall</u>, 346 F. App'x 163 (9th Cir. 2009)); <u>O'Neal v. Province</u>, 415 F. App'x 921 (10th Cir. 2011) (rejecting petitioner's argument that a "preliminary hearing provides less of an opportunity for cross-examination than [does] a trial"); <u>cf.</u> <u>Blackwell v. Biter</u>, No. CV 12-00624 MWF (RZ), 2012 WL 5989892, at *7-8 (C.D. Cal. Sept. 28, 2012) (cross-examination at preliminary hearing need only be "adequate" to permit the resulting testimony to be used later if the witness is unavailable), <u>report and recom. adopted</u>, 2012 WL 5989860 (C.D. Cal. Nov. 30, 2012).

1    In the present case, petitioner does not argue that the prosecution failed to make a good faith

2    effort to locate Dena.  Rather, petitioner's argument appears to focus largely on the simple fact

3    that the use of her preliminary hearing testimony violated his rights to confront her.  Petitioner

4    does note that his attorney for the preliminary hearing had insufficient time to prepare and

5    therefore failed to thoroughly cross-examine Dena.  However, petitioner raises just one specific

6    instances of this failure.  He states that the attorney at the preliminary hearing attempted to

7    question Dena about her implication of petitioner in the burglary case.  The court found those

8    questions irrelevant.  It is unclear what petitioner finds unreasonable about counsel's conduct

9    since, as discussed above, petitioner feels counsel should have attempted to bring up the burglary

10   charges during trial.

11       In any event, the Court in Crawford held that the defendant need only have had an

12   "opportunity" to cross-examine the unavailable witness.  Petitioner had that opportunity.  His

13   attorney at the preliminary hearing questioned Dena about the substantial number of medications

14   she was taking at the time she was assaulted (RT 210-11, 214), about her mental health diagnoses,

15   which included schizophrenia and bipolar disorder (RT 214), and about her jealousy of

16   petitioner's relationship with his ex-wife (RT 214-15).  Counsel had to walk a fine line at the

17   preliminary hearing, as counsel at trial would have had to do had Dena testified, of attempting to

18   show Dena's story immediately following the assault was not believable but her story told at the

19   hearing was entitled to credence.  The court finds no Confrontation Clause violation based on the

20   use of Dena's preliminary hearing testimony at petitioner's trial.

### 2.   Failure to Hear Dena's Testimony on Motion for New Trial

22       Petitioner next argues the trial court violated his rights under the Confrontation Clause when

23   it declined to hear Dena's testimony as part of its consideration of petitioner's motion for a new

24   trial.  Respondent argues that Sixth Amendment right to confront witnesses applies only to a

25   criminal trial.  Therefore, respondent contends, petitioner seeks a "new rule" barred by Teague.

26       The non-retroactivity principle announced in Teague "prevents a federal court from granting

27   habeas corpus relief to a state prisoner based on a rule announced after his conviction and

28   sentence became final."  Caspari v. Bohlen, 510 U.S. 383, 389 (1994).

> "[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." Teague, 489 U.S. at 301. In determining whether a state prisoner is entitled to habeas relief, a federal court should apply Teague by proceeding in three steps. First, the court must ascertain the date on which the defendant's conviction and sentence became final for Teague purposes. Second, the court must "[s]urve[y] the legal landscape as it then existed," Graham v. Collins, supra, 506 U.S. [461], at 468, 113 S.Ct. [892], at 898, and "determine whether a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution," Saffle v. Parks, 494 U.S. 484, 488 (1990). Finally, even if the court determines that the defendant seeks the benefit of a new rule, the court must decide whether that rule falls within one of the two narrow exceptions to the nonretroactivity principle. See Gilmore v. Taylor, 508 U.S. 333, 345 (1993).

Id. at 390; see also O'Dell v. Netherland, 521 U.S. 151, 157 (1997); Dyer v. Calderon, 151 F.3d 970, 989 (9th Cir. 1998). The two exceptions to Teague's non-retroactivity principle are: (1) when the new rule forbids "punishment of certain primary conduct" or prohibits "a certain category of punishment for a class of defendants because of their status or offense" or (2) the new rule is a "watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Beard v. Banks, 542 U.S. 406, 416–17 (2004) (quoting Penry v. Lynaugh, 492 U.S. 302, 330 (1989)).

Petitioner provides no authority for the proposition that the trial court was required to hear Dena's testimony when it considered petitioner's motion for a new trial. The Confrontation Clause protects an "accused" by giving him the right in a "criminal prosecution" to "confront the witnesses against him." Crawford, 541 U.S. at 42. Petitioner's trial had concluded. He was no longer "accused;" he was convicted. The Supreme Court has stressed that the Confrontation Clause right is a "trial right." Pennsylvania v. Ritchie, 480 U.S. 39, 53 (1987). It "does not apply to other court proceedings that are not part of the jury trial." Penton v. Kernan, 528 F. Supp. 2d 1020, 1037 (S.D. Cal. 2007) (citing Ritchie, 480 U.S. at 52). In Penton, the court considered a similar issue and held that petitioner Penton did "not have a right to confrontation at a post-conviction new trial motion hearing because the right is a trial right." Id.; see also Oken v. Warden, MSP, 233 F.3d 86, 92-93 (1st Cir. 2000) (no Confrontation Clause right in post-conviction proceedings).

Whether petitioner seeks the application of a new rule, or whether his claim simply fails on its merits, this court finds petitioner's claim that his Confrontation Clause rights were violated when Dena was not permitted to testify during proceedings on the motion for a new trial should be denied.

## MOTION TO STAY CASE

In a document filed here on April 27, 2017, petitioner requested that this court stay proceedings in this case pending his attempt to "resolve some issues with the state courts in concerns of the photo evidence that this court would not consider and the issue with trying to get the knife tested." (ECF No. 28.)  In his July 12, 2017 filings, petitioner indicates that he raised those issues with the state courts and they were denied.  (ECF No. 30.)  As explained above, petitioner states that the appeal concerned "evidence that my trial lawyer was ineffective for not presenting and not having the knife tested that the alleged victim said I cut her with."  (Id. at 1.)  Attached to petitioner's filing are copies of orders from California courts denying petitioner's recent habeas petitions.  (Id. at 4.)  It thus appears that petitioner has had the opportunity he requested to raise issues in state court.  Accordingly, petitioner's motion to stay the case should be denied as moot.

## REQUEST FOR APPOINTMENT OF COUNSEL

In his July 12 filings, petitioner also requests appointment of counsel.  Petitioner states he has little education and is "having trouble doing appeals and writs on my own and meet[ing] time limits."  (ECF No. 29 at 1.)  There currently exists no absolute right to appointment of counsel in habeas proceedings.  See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996).  However, 18 U.S.C. § 3006A authorizes the appointment of counsel at any stage of the case "if the interests of justice so require."  See Rule 8(c), Fed. R. Governing § 2254 Cases.  In the present case, the court finds petitioner's claims do not have merit.  Therefore, the court does not find that the interests of justice would be served by the appointment of counsel.  Petitioner's request will be denied.

## REQUEST FOR EVIDENTIARY HEARING

Finally, petitioner again requests an evidentiary hearing.  (ECF No. 29.)  He states that he should have an opportunity to present new evidence to challenge the victim's credibility.  As

petitioner was informed when the court denied a prior request for an evidentiary hearing, under 28 U.S.C. § 2254(d), this court may not consider evidence which has not been presented to the state court when making a determination of whether the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determinate of the facts." See Cullen v. Pinholster, 563 U.S. 170, 182-83 (2011). Here, the court has determined that petitioner does not satisfy the requirements of § 2254(d) for any claims. Therefore, his request for an evidentiary hearing should be denied.

**CONCLUSION**

Petitioner has failed to establish that the decisions of the state courts rejecting his claims were contrary to, or an unreasonable application of, clearly established federal law or were an unreasonable interpretation of the facts. See 28 U.S.C. § 2254(d). Therefore, petitioner fails to satisfy the requirements of § 2254(d).

Accordingly, IT IS HEREBY ORDERED that petitioner's request for the appointment of counsel (ECF No. 29) is denied; and

IT IS HEREBY RECOMMENDED that:

1. Petitioner's motion for a stay (ECF No. 28) be denied as moot;

2. Petitioner's request for an evidentiary hearing (ECF No. 29) be denied; and

3. Petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In the objections, the party may address whether a certificate of appealability should issue in the event

an appeal of the judgment in this case is filed. See Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated:  August 11, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-habeas/mark0665.fr